[Crim. No. 23830. First Dist., Div. One. Mar. 16, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
REYNOLD JOHN DeFREITAS, Defendant and Appellant.

COUNSEL

Gretchen Dumas under appointment by the Court of Appeal, and Laurence B. Chaset for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, J.**—Defendant DeFreitas was convicted upon a jury's verdict of possessing a controlled substance, phencyclidine (PCP), for sale, in violation of Health and Safety Code section 11378.5. He had admitted two prior felony convictions. His appeal is from the judgment which was thereupon entered.

Pursuant to a here uncontested search warrant, police officers found and seized in the home of DeFreitas and his wife Kimberly, the charged proscribed substance and paraphernalia for its use. DeFreitas and Kimberly were thereupon arrested and were later jointly charged by information in the superior court with possession, and possession for sale, of the controlled substance.

Criminal proceedings were thereafter suspended as to Kimberly, and she was accepted for noncriminal diversion. Conditions of such acceptance, among other things, were that she "be of good conduct and obey the law" and not "use any drugs or narcotics," and "if you get any arrests, particularly if it pertains to drugs or narcotics, that would mean an automatic termination of the diversion and reinstitution of the criminal proceedings."

At DeFreitas' subsequent trial he testified that the PCP found in his home belonged not to himself, but instead to his wife, Kimberly, who was a user of the substance. And he disclaimed any knowledge of the presence of it prior to its discovery and seizure by the police.

Following DeFreitas' testimony, through his attorney he made a "motion that the court grant immunity to Kim DeFreitas [Kimberly] so that she may testify in this matter. I understand and am aware of the fact that such a motion is unusual, if not in California unheard of." "Use immunity" as distinguished from "transactional immunity" was sought.

"Use immunity protects a witness only against the actual use of his compelled testimony and evidence derived directly or indirectly therefrom, while transactional immunity protects the person against all later prosecutions relating to matters about which he testifies." (*People* v. *Sutter* (1982) 134 Cal.App.3d 806, 813 [184 Cal.Rptr. 829]; and see Witkin, Cal. Evidence (2d ed. 1982 supp.) § 928, p. 508.)

The motion was attended by an offer of proof that Kimberly would corroborate DeFreitas' testimony, thus incriminating herself and exculpating him.

The motion was opposed by the prosecutor.

The motion was thereafter denied. Its denial constitutes DeFreitas' only claim of error on his appeal.

He argues as follows:

"Appellant, in presenting his defense, requested that Kim DeFreitas be granted 'use immunity.' Ms. DeFreitas' testimony was to have been exculpatory. However, because Ms. DeFreitas was also implicated in the crime, her testimony was also self-incriminating. Thus, the defense asserted that if she wasn't granted use immunity, she planned to assert her Fifth Amendment privilege against self-incrimination and refuse to testify. The trial court rejected this request, and Ms.DeFreitas did not testify. As a result, appellant was denied his constitutional right to present favorable evidence on his behalf. Specifically, appellant's right to a fair trial (Fifth Amendment of United States Constitution —guarantee of due process) and his right to present and cross examine witnesses (Sixth Amendment of United States Constitution—right to compulsory process) were simultaneously affected. Under either constitutional theory when an accused has been denied his right to present exculpatory evidence, the ultimate integrity of the fact finding process has been called into question.

"Currently, even though important constitutional rights are at stake, the notion of defense immunity has not been accepted by California courts or most federal tribunals. (*People* v. *Traylor* (1972) 23 Cal.App.3d 323 [100 Cal.Rptr. 116]; *United States* v. *Carman* (9th Cir. 1978) 577 F.2d 556.) However, several legal commentators and recent developments in the law on this issue

(*Government of Virgin Islands* v. *Smith* (3d Cir. 1980) 615 F.2d 964; *State* v. *Broady* (1974) 41 Ohio App.2d 17 [321 N.E.2d 890, 70 Ohio Ops.2d 18]) demonstrates that California courts must reexamine their position, and hold that a court may grant use immunity to a defense witness in the proper circumstances."

First to be considered, we think, is a broad summary of the law on the subject, prepared (1981) by the editors of American Law Reports from an analysis of federal and state judicial authority. It is said (Annot. (1981) 4 A.L.R. 4th 617, 620-621):

"It is generally accepted, as a reality of the process of criminal prosecution, that, on occasion and where the need of the government will be served thereby, immunity from prosecution may be granted to a codefendant or other prosecution witness in exchange for testimony regarding the crime under investigation. The avowed purpose of such immunity is to permit the state to compel necessary testimony for the purpose of effecting criminal prosecution in circumstances where the absence of such testimony would lead to the release of suspected individuals to the detriment of society.

"As a general rule, however, the defendant in a criminal prosecution has not been afforded a similar opportunity to compel testimony of witnesses. This denial has been based on a variety of grounds and has few exceptions. Thus, for example, the courts have declined to extend to the defendant the right to grant, or to compel the prosecution to grant, immunity from prosecution to defense witnesses on the grounds that such right is vested solely in the prosecution as a result of legislative grant and that neither the court nor the defendant, acting alone or in concert, could compel the prosecution to exercise its authority.

"Similarly, the courts have been reluctant to accept constitutional justification for extending the capacity to immunize witnesses. This refusal has withstood specific constitutional arguments, such as that the refusal to allow a defendant to compel immunity for defense witnesses was a denial of due process of law or the denial of the defendant's right to present his own witnesses. Likewise, arguments that the defendant, as a result of the refusal to extend immunity to defense witnesses, has been denied a fair and equal trial have met with little success in the courts. . . . Thus, although use and derivative use, rather than transactional, immunity constitutes a sufficient substitute for Fifth Amendment protection, the *courts have been reluctant to extend the immunity power* [our italics] beyond the legislatively mandated purpose of enabling the prosecutor to properly perform the duties of his office."

Much cited authority, federal and state, supports the summary. Scant *contra* authority is also cited, such as "where prosecutorial conduct was so flagrant

that the basic fairness of the trial was put into question. . . . It should be noted, however, that the main direction of these arguments is equitable, and there is no authority for the proposition that the defendant has an affirmative right to compel the grant of immunity in any instance.[1] This being the case, some additional factor would seem necessary to support the defendant's claim for immunity as being essential to a fair and equal trial." (*Id.*, p. 621.)

(Among the reasons, that "courts have been reluctant to extend the [*use*] immunity power" might be a scenario such as this. It is inherent in the use immunity rationale that the witness, under oath, shall testify truthfully and be subject to a perjury prosecution therefor, if he does not. A witness, granted such immunity, testifies under compulsion that he, rather than the defendant, committed the charged crime. Since the use immunity permits prosecution of the witness, the prosecutor thereafter does so. The witness faces the baffling trilemma whether (1) to admit, without immunity, his guilt of the charged offense, *or* (2) to deny his guilt, thus creating evidence of his perjury on one or the other occasion, *or* (3) to refrain from testifying, thus submitting to an oppressive chill upon exercise of his constitutional right to testify on his own behalf.)

■ We advert now to the law of California.

Penal Code section 1324 is the state's immunity statute. Providing for transactional immunity, as relevant, it states: "In any felony proceeding . . . if a person refuses to answer a question . . . on the ground that he may be incriminated thereby, and if the district attorney of the county in writing requests the superior court . . . to order that person to answer the question . . . the superior court shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered . . ., and the court shall order the question answered . . . unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the order. After complying, and if, but for this section, he would have been privileged to withhold the answer given . . ., that person shall not be prosecuted . . . for or on account of any fact or act concerning which, in accordance with the order, he was required to answer . . . but he may nevertheless be prosecuted . . . for any perjury, . . . committed in answering, or failing to answer, . . . in accordance with the order."

In our examination of California's position on such an issue we first observe the state's high court's holding of *In re Weber* (1974) 11 Cal.3d 703, 720 [114 Cal.Rptr. 429, 523 P.2d 229]:

---

[1]*Government of Virgin Islands* v. *Smith, supra*, 615 F.2d 964, and *State* v. *Broady, supra*, 321 N.E.2d 890, relied upon by DeFreitas are such cases.

"It was undoubtedly within the power of the Legislature to make the grant of immunity conditional upon a request of the district attorney of the county or the Attorney General, the power to provide for the exercise of a grant of immunity being essentially a legislative function. . . . Making a grant of immunity subject to a request therefor by the district attorney of the county or the Attorney General does not invade judicial prerogatives, since the decision to seek immunity is an integral part of the *charging* process, and it is the prosecuting attorneys who are to decide what, if any, crime is to be charged."

Referring to section 1324, the same court in *Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 146 [137 Cal.Rptr. 14, 560 P.2d 1193], repeated its earlier holding: "The denials by trial courts of *transactional* immunity orders sought by *defendants* in criminal proceedings for their own witnesses have been repeatedly sustained on the ground that Penal Code section 1324 permits transactional immunity orders only on the request of the district attorney. . . . Upholding the constitutionality of this statutory requirement of a prosecutorial request, we said in the case of *In re Weber* (1974) 11 Cal.3d 703, 720 [114 Cal.Rptr. 429, 523 P.2d 229]: 'Making a grant of immunity subject to a request therefor by the district attorney of the county or the Attorney General does not invade judicial prerogatives, since the decision to seek immunity is an integral part of the *charging* process, and it is the prosecuting attorneys who are to decide what, if any, crime is to be charged. . . .' "

The court then pointed out (*id.*, p. 148) that: "The trial court must [in cases such as this, treat the prosecutor's express objection to immunity] as conclusively establishing that an immunity order . . . cannot be issued because it would or might unduly hamper criminal prosecution of the witness. The court cannot require the objecting prosecutor to amplify or justify the submitted . . . [objection] nor undertake to assess the nature or degree of the impact the immunity grant would have upon prosecutorial functions. To do so would improperly interfere with the prosecutor's free exercise of discretion to determine what if any criminal charges should be brought against particular individuals."

(This rationale seems reasonably, and equally, applicable to both "transactional immunity" *and* "use immunity.")

The rule of *Daly* v. *Superior Court* has been reiterated by the state's Courts of Appeal. "The prosecutor may freely exercise discretion to determine what, if any, criminal charges should be brought against particular individuals and it is improper for the courts to interfere with the exercise of that discretion." (*People* v. *Glover* (1980) 111 Cal.App.3d 914, 918 [169 Cal.Rptr. 12].) "The cases interpreting this code section [Pen. Code, § 1324] emphasize that the purpose of the immunity statutes is to make it possible to reach the leaders of

criminal conspiracies by guaranteeing immunity to the underlings and minor helpers, and *to enable the People* to secure testimony and other evidence from such persons. . . . Accordingly, the cases hold that the *prosecuting attorneys are vested with discretion in requesting immunity* . . . and the state is under no obligation to make a witness available to testify for a defendant by granting him immunity from prosecution." (*People* v. *Pineda* (1973) 30 Cal.App.3d 860, 867-868 [106 Cal.Rptr. 743].) "The decision as to who shall be granted immunity is ultimately a legislative function. (See 8 Wigmore . . . .) Necessarily prosecuting attorneys must exercise considerable discretion in this area, subject to the guidelines established by the Legislature. . . . The Fourteenth Amendment to the United States Constitution does not require that the power to trigger the effect of a law such as section 1324 of the Penal Code which the Legislature has vested in the district attorney must also be exerciseable by a defendant. Clearly a legislature can react differently to the probable motives of a prosecutor who requests immunity, and those of a defendant in a criminal case." (*People* v. *Traylor, supra,* 23 Cal.App.3d 323, 332.) "Appellant argues that a defendant in a criminal action should be entitled to require the state to grant immunity to a witness who has knowledge of the facts of his case, to insure him a fair trial. The cases hold that the state is under no obligation to make a witness available to testify for a defendant, or on behalf of the People for that matter, by granting him immunity from prosecution." (*In re Marshall K.* (1970) 14 Cal.App.3d 94, 99 [92 Cal.Rptr. 39].)

No contrary California authority appears; at least none is pointed out and we ourselves have been able to find none.

We are, of course, bound by the holdings of *In re Weber, supra,* 11 Cal.3d 703, and *Daly* v. *Superior Court, supra,* 19 Cal.3d 132. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) And were we not so bound, we would nevertheless deem ourselves obliged to follow the greater weight, and in our opinion the better reasoning, of what is clearly the majority rule throughout the state and federal courts of our nation. Accordingly, no merit is found in the appeal.

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 29, 1983.