[No. B008993. Second Dist., Div. Six. Jan. 6, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
CASIMIRO ZARATE ESTRADA, Defendant and Appellant.

**COUNSEL**

David H. Failer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PECK, J.**\*—Defendant appeals a jury verdict of guilty to seven sex offenses. The court also found to be true special allegations on each of those counts. The allegations charged Penal Code section 288, subdivision (a)[1] and statutory sodomy, section 286, subdivision (c). Appellant does not chal-

---

\*Assigned by the Chairperson of the Judicial Council.

[1] All further statutory references are to the Penal Code unless otherwise indicated.

lenge the sufficiency of the evidence on appeal but does make the following contentions specifically alleging error.

1. The court should have granted appellant's motion under section 995 to set aside the preliminary hearing on the grounds that appellant did not waive his right to a certified Spanish-English interpreter.

2. The trial court erroneously denied the appellant a personal interpreter during trial and in addition did not obtain a knowing and intelligent waiver of his constitutional right to a personal interpreter at the beginning of the trial.

3. The trial court should have granted immunity to a prospective defense witness.

4. The trial court imposed the upper term for the principal offense for reasons constituting an element of the offense and further erred in imposing consecutive sentences for reasons constituting an element of those offenses.

We find against appellant on all issues and affirm the judgment.

## DISCUSSION

■ Defendant Estrada argues that the motion to set aside the preliminary hearing under section 995 should have been granted. There is no reporter's transcript of the hearing on the motion, although we do have the notice of motion and points and authorities submitted by defendant. There is no written opposition by the People. The motion was denied. The same issues raised in that motion are now raised on appeal. There were two interpreters at the preliminary hearing. One was certified. (Gov. Code, § 68560.) The other was not. After a colloquy between counsel and the court, it was determined that the certified interpreter would translate for the witnesses and the noncertified interpreter would act as defendant's personal interpreter. Defendant's attorney waived any right his client might have to a certified interpreter. There is no record that defendant personally waived any objection to a certified interpreter.

■ In addition, at the hearing on the motion, the appellant submitted a declaration stating that the interpreter, in his opinion, condensed long testimony to short phrases and reduced "many-worded" sentences into small phrases. He stated that he did not understand much of what the witnesses, speaking in English, were saying. It would appear that the certified interpreter was interpreting for those witnesses speaking in Spanish from Spanish

into English. In addition, his attorney at the preliminary hearing spoke Spanish.

█ Initially, the People argue that because there is no reporter's transcript of the section 995 motion itself and because it is appellant's duty to provide that record on appeal, his contention should be summarily rejected. It seems that there is sufficient record on appeal. We have the reporter's transcript of the preliminary hearing, as well as the motion and points and authorities filed in the motion. The same issues were obviously argued at the trial court that are now being made here. The People's initial argument must fail.

█ When one gets down to the substantive argument, however, the defendant's position cannot be upheld. The California Constitution, as interpreted by the California Supreme Court, makes it clear that a defendant is entitled to two interpreters, one to interpret the witnesses' testimony and the other to be the personal interpreter for the defendant. (Cal. Const., art. I, § 14; *People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198].) The Legislature has set up a comprehensive plan to provide for certification of court interpreters. (Gov. Code, § 68560 et seq.) Only those interpreters who are properly certified may be utilized unless good cause is found by the judge for appointment of an interpreter not on the recommended list. (Gov. Code, § 68562.) There is no requirement, however, that a certified interpreter be assigned as long as there is good cause shown for appointment of an uncertified interpreter. (Gov. Code, § 68562.) The record does not reflect why both interpreters were not certified. The court merely said that the other interpreter was from the probation office. The court originally was going to have the certified interpreter interpret for defendant Estrada; but later, after discussion with counsel, decided to have the certified interpreter interpret for the witnesses who were testifying in Spanish and have the noncertified interpreter interpret all testimony for defendant. The defendant's attorney agreed to have the uncertified interpreter for his client with the certified interpreter translating for the witnesses who were testifying in Spanish. Defendant's attorney approved the procedure. No challenge at trial was made to the use of an uncertified interpreter.

*Aguilar* requires a personal waiver to the defendant's right to an interpreter. (*People* v. *Aguilar, supra,* 35 Cal.3d at p. 791.) There is no right, however, to a certified interpreter. █ There is only a right to a competent interpreter. █ There is also no requirement, in our opinion, that defendant or his attorney personally waive the use of a court certified interpreter. That is a matter for the trial judge. █ Certification is simply foundational to the interpreter's competence. He or she should not be found incompetent just because he or she is not on the certification list. Should defendant disagree with the decision of the court regarding use of a non-

certified interpreter, a hearing could then be held to determine the competence of the interpreter or if any rights defendant might have would be prejudiced by the use of a noncertified interpreter. No such hearing was requested. Should the competence of a noncertified interpreter later become an issue, it can be raised then. Not having been raised in the lower court, it cannot be grounds for granting a motion to set aside the preliminary hearing or for reversal on appeal short of a proper showing of error. Mere noncertification is not necessarily error.

 The rule for reviewing error at the preliminary hearing level is as follows: ". . . irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].) While deprivation of a personal interpreter would be jurisdictional in the most fundamental sense, deprivation of a noncertified personal interpreter is not. (Gov. Code, § 68560.) There is nothing in the record to show that defendant suffered prejudice as a result of the use of a noncertified interpreter except his self-serving declaration submitted with the motion to set aside the preliminary hearing. We do not find that persuasive. The court's ruling denying the section 995 motion is affirmed.

 The defendant next alleges that the trial court denied him a personal interpreter during trial. That is stretching the case a bit. In fact, there was an interpreter for Spanish-speaking witnesses and a personal interpreter for the defendant throughout the trial. Both were certified, and defendant's lawyer, Mr. Flores, was also fluent in Spanish. Mr. Flores during trial stated that defendant's interpreter was "an excellent interpreter." For either tactical or strategic reasons, defendant's attorney, during the testimony of Spanish-speaking witnesses, agreed to have defendant's interpreter only interpret the words of the witnesses' interpreter if she disagreed with the translation or with the nuance of what was used. This was approved by defendant's attorney in the morning when the first Spanish-speaking witness testified. In fact, defendant's attorney then indicated that defendant waived that right as well. That afternoon the court specifically inquired of defendant personally whether he approved of the procedure that had been approved and whether he specifically waived the right to have the interpreter interpret everything that was being said. Defendant then waived his right to have the interpreter interpret every word and agreed to the procedure being used. The record shows that defendant was present through the entire proceedings in the morning and had all those proceedings translated for him and at least

impliedly agreed to the procedure at the beginning of the testimony and most assuredly specifically waived the right soon thereafter.

The defendant also argues that even if he did waive his right to have his personal interpreter interpret all of the proceedings verbatim, that waiver was not made knowingly and intelligently as required in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and in *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. Defendant did however make a knowing and intelligent waiver of his right to have his personal interpreter interpret all of the proceedings. During the trial, the court, talking to defendant, said, ". . . At that time I had a discussion with your counsel, and it was decided that your interpreter, who is sitting beside you, would only interpret the words of the witness' interpreter if she disagreed with the translation or with the nuance that was used. When I inquired this morning in front of the jury, your attorney indicated that you were willing to give up the right to have your interpreter interpret every word that the witness' interpreter says, and so we went ahead on that basis. [¶] Is it your desire to do as your attorney indicated, that is, to have your interpreter, who is sitting beside you, interpret the words of the witness' interpreter only in the event she disagrees with his choice of words or the nuances of his choice of words?

"THE DEFENDANT: Yes. Or when I don't hear what they're saying that she repeat it for me.

"THE COURT: All right. You would like that, too.

"THE DEFENDANT: Yes. Sometimes I can't hear very well what they're saying.

"MR. FLORES: That's fine.

"THE COURT: All right. For the record, Mr. Flores, who's the attorney for the defendant, is also proficient in Spanish; is that right?

"MR. FLORES: That's correct, Your Honor."

Defendant's attorney then went on to praise defendant's interpreter as an excellent interpreter and indicated to the court that he too was fluent in Spanish and in English. That waiver, without anything to the contrary, certainly seems to be more than sufficient to be held to be a knowing and intelligent waiver of his rights. (*In re Tahl, supra,* 1 Cal.3d 122.) The fact that it was made in the afternoon session rather than the morning session when the witness took the stand cannot obviate that waiver. It appears abun-

dantly clear that he was aware of the proceedings and personally waived any objections to his attorney's decisions soon after they were made.

■ A witness was called by the defense during the trial who, at least in the theory of the defense, committed similar, if not the same, acts on some or all of the victims. That witness was refused immunity by the prosecution and so refused to testify. Defendant claims that he was denied the opportunity to offer potentially exculpatory evidence. Appellant offers no authority for such a rule except a citation from a dissenting opinion in *People* v. *Sutter* (1982) 134 Cal.App.3d 806 [184 Cal.Rptr. 829]. ■ The sole discretion as to whom to prosecute is held by the district attorney. (§ 1324; *In re Weber* (1974) 11 Cal.3d 703 [114 Cal.Rptr. 429, 523 P.2d 229]; *Daly* v. *Superior Court* (1977) 19 Cal.3d 132 [137 Cal.Rptr. 14, 560 P.2d 1193]; *People* v. *DeFreitas* (1983) 140 Cal.App.3d 835 [189 Cal.Rptr. 814].) There should be no requirement that the district attorney offer immunity upon the request of a defendant who wishes to produce exculpatory evidence. One need not speculate as to the long line of potential witnesses who would, upon a guarantee of immunity, then "take the rap." ■ While defendant has the right to present any witnesses he wishes, he does not have the right to force an offer of immunity for his witnesses. The mischief that such a rule would cause is incalculable.

■ The trial judge chose count VIII as the principal term and then sentenced defendant Estrada to the upper term of eight years for his conviction of that count. Defendant objects to the imposition of the aggravated term on the basis that the reason chosen by the judge to aggravate the term was the minority of the victim, itself an element of the substantive offense. (Cal. Rules of Court, rule 441(d).) However, a reading of the transcript does not support the claim. The trial court stated, "I choose that count because of all the evidence presented. That dealing with Erica [C.] was the most moving to the Court. She was a particularly vulnerable individual. This was a little girl that was five years old at the time of the offense. Barely six years old at the time she testified. Small in stature to the point that the jury could not see her peering over the—over the rail that surrounds the witness box. The clerk had to get her a booster chair to testify. She was shy and she was withdrawn in her demeanor. She was the one who refused, loudly refused to come to court and had to almost be dragged in here. [¶] So I find that Erica [C.] was a particularly vulnerable individual and victim of this crime, and I use that fact to impose the upper eight-year term. . . ." Clearly, the court was imposing the aggravated term for reasons other than simply age. The court was finding that she was a particularly vulnerable, small child, shy and withdrawn. She was frightened in the court's eyes by being required to testify and was not only a young child but the youngest child among the victims. The aggravated term was proper. (Cal. Rules of Court, rule

421(a)(3).) *People* v. *Flores* (1981) 115 Cal.App.3d 924 [171 Cal.Rptr. 777], cited by defendant, is not applicable. The victims there were 14 and 16 years old. The court in that case found that a simple finding of minority of the victims was not sufficient to allow aggravation under the determinate sentencing rules. In that sense the Legislature has already determined that all persons of specified ages are vulnerable by reason of their age alone. The court here, however, was concerned because the victim was a very young girl who was also small in stature, shy, withdrawn and loudly objecting to being required to testify. The reasons stated for the aggravated term were sufficient. (*People* v. *Hetherington* (1984) 154 Cal.App.3d 1132, 1142-1143 [201 Cal.Rptr. 756].)

■ The defendant also objects to the imposition of consecutive sentences on the other counts. While it is not clear from defendant's brief, it would appear that again defendant is claiming that the reason for imposing the consecutive sentences on these counts was again the age of the children. Because the minority of the children is an element of the offenses themselves, defendant argues consecutive sentences should not have been imposed. A review of the record indicates that sufficient reasons were given.

In dealing with count IX of the information, the court found in addition to minority that the charge was a different act at a different time than the ones alleged in the principal term and that it also exhibited a high degree of cruelty. The court also found that she was small and that she was hurt by the act and in effect had great bodily injury done to her. The court also found sophistication and planning and a course of conduct over a long period of time. Lastly, the court found multiple acts on different victims. (Cal. Rules of Court, rule 425(a)(1), (a)(2) and (a)(3).)

As to count X, the court again found a different act at different times and also that defendant had taken advantage of a position of trust, namely being the step-father in the home. (Cal. Rules of Court, rule 425(a)(1).)

As to count I, the court found multiple acts and multiple victims and that the defendant occupied a position of trust which he had violated. He also found the victim, Lydia C., to be particularly vulnerable and while more robust than Erica, still a child of small stature and that she was shy and withdrawn. She was even more vulnerable than usual because of the indication she may have been previously molested by another person. (Cal. Rules of Court, rule 425(a)(1), (a)(2) and (a)(4).)

As to count III, the court found that defendant had taken advantage of a position of trust, being the stepfather in the house, and also that count III was a different act at a different time. (Cal. Rules of Court, rule 425(a)(1).)

The court found count V was a different act at a different time and also that it showed a high degree of cruelty. In addition, the victim indicated that the act caused an infliction of great bodily injury upon her. (Cal. Rules of Court, rule 425(a)(1) and (a)(2).)

Lastly, the court found count VII was also a different act at a different time involving multiple victims, and for that reason ordered that count to run consecutively too. (Cal. Rules of Court, rule 425(a)(1) and (a)(4).)

The court found in each case that there were reasons outside of the elements of the crimes themselves to sentence defendant to consecutive terms.

A review of the transcript of the entire sentencing process reveals no grounds for reversal of the court's sentence. The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied February 5, 1986, and appellant's petition for review by the Supreme Court was denied May 8, 1986.