Filed 11/20/15  P. v. Ramirez-Montenegro CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062058 |
| v. | (Super.Ct.No. FWV700383) |
| EDGAR RAMIREZ-MONTENEGRO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Colin J. Bilash, Judge.  Affirmed.

Loleena Ansari, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant and defendant Edgar Ramirez-Montenegro appeals from the trial court's order denying his motion to set aside his guilty plea admitting second degree robbery

1

(Pen. Code,[1] § 211) and the allegation that he personally used a firearm in the course of the offense (former § 12022.5 subd. (a)(1)).

The trial court sentenced defendant to a total term of four years: a three-year midterm on the robbery count, plus a one-year enhancement for the firearm allegation.

Defendant, a noncitizen, argues the trial court should have ruled on his motion to set aside the plea and vacate the judgment pursuant to section 1016.5. We disagree.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 2007, defendant was arrested and later charged with the armed robbery of a Montclair liquor store that had occurred earlier in the week.

On March 19, 2007, with a certified Spanish interpreter present, defendant pled guilty to the robbery and the firearm allegation. As part of his plea, defendant initialed, signed, and dated a declaration (§ 859a; *In re Tahl* (1969) 1 Cal.3d 122) containing, in relevant part, the following language: "I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, or denial of naturalization will result from a conviction of the offense(s) to which I plead guilty/nolo contendere (no contest)." The interpreter certified that she translated into Spanish all of the contents of the form. The trial court asked defendant on the record whether he had interpreted for him from English into Spanish "all the handwritten and printed material"; whether he understood "all [the] items"; whether his attorney "explained all [the] items" to him; and whether he understood "the nature of the charges" and the "consequences of

_____

[1] All further statutory references are to the Penal Code, unless otherwise noted.

2

[his] plea." Defendant replied, "Yes." When asked whether he was entering the plea under compulsion or duress, defendant replied that he was not.

On May 25, 2007, defendant moved to have the guilty plea withdrawn pursuant to section 1018 on the grounds that he was told his sentence would be three years rather than four; that if he did not plead guilty, his family would be killed; and that he did not know what he was signing. At a hearing on May 31, the trial court denied the motion, finding that defendant had behaved and replied to the contrary when he entered the plea.

In 2014, defendant twice attempted to file in the trial court a motion to set aside his plea and vacate the judgment pursuant to section 1016.5, which permits noncitizen defendants to move a trial court to vacate a plea for its failure to provide the required advisement of potential collateral immigration consequences under subdivision (a) of the same section. In that motion, defendant noted that he was in federal custody for illegal reentry after conviction of a felony (8 U.S.C. § 1326), and he claimed he was not properly advised, either through his interpreter or through his attorney, of the collateral immigration consequences of his plea. Both times, the trial court declined to hold a hearing and returned the motion to defendant, noting the first time that it did not have "jurisdiction, [because the] plea was entered in 2007," and noting the second time that defendant's "remedy" was "appellate only."

On October 2, 2014, defendant filed a notice of appeal from the trial court's order returning his motion. Defendant also filed the motion itself in this court; we treated it as

3

a petition for writ of habeas corpus and summarily denied on October 20, 2014. (Case No. E062021.)

## DISCUSSION

A threshold question confronts us here: how should we construe the trial court's return of defendant's section 1016.5 motion based on "lack of jurisdiction" and his subsequent appeal? Defendant contends we should treat the matter as a direct appeal pursuant to section 1237. The People contend we should treat the matter a petition for writ of error *coram nobis*. As discussed *post*, we will take an approach that differs from both.

The recent case of *People v. Aguilar* (2014) 227 Cal.App.4th 60 (*Aguilar*) confronted this same procedural issue under similar facts. Broadly speaking, the approach *Aguilar* took was to evaluate what remedies were available to the defendant, and then determine whether the defendant's claims fit within any of those remedies. Because we find *Aguilar* persuasive and instructive as to how we should resolve the present case, we discuss *Aguilar* here at some length to explore its reasoning.

In *Aguilar*, the noncitizen defendant filed a motion to vacate his conviction and withdraw his plea to illegal possession of a firearm. (*Aguilar*, *supra*, 227 Cal.App.4th at pp. 64-65.) Similar to the present case, the trial court took the motion "off calendar, for lack of jurisdiction," and so declined to reach the merits of the defendant's claims. (*Id.* at p. 66.) As a result, the court noted that it (like us) was confronted with two procedural choices on appeal: "either dismiss the appeal as premature in the absence of a ruling on

4

the merits of the motion, or review the trial court's ruling [that it lacked jurisdiction to reach the merits]." (*Id.* at p. 67.) The court refused to follow either choice: "[This is not] the entire story[.] . . . We decline to do either, . . . because either would be futile. . . . [E]ven with jurisdiction to hear the merits of Aguilar's motion, the trial court would lack discretion to grant the requested relief." (*Ibid.*)

The court then examined all of the possible remedies an individual in defendant's position—that is, "[a] noncitizen who has been convicted of a felony based on a plea of guilty or nolo contendere, but who claims that he was not advised on the immigration consequences of [his] plea"—could seek: (1) a direct appeal from the judgment under section 1237, "if the record reflects the facts on which the claim is based"; (2) filing a motion pursuant to section 1016.5; (3) a petition for a writ of habeas corpus founded on ineffective assistance of counsel. (*Aguilar*, *supra*, 227 Cal.App.4th at p. 68, fn. omitted.) Although the court noted that *coram nobis* relief premised on ineffective assistance of counsel "for failure to advise the defendant of the immigration consequences" of the plea "cannot be used to challenge a conviction or withdraw the plea," the court nevertheless treated that remedy as "potentially available" to the defendant by evaluating it in the opinion. (*Ibid.*)

As to treating the appeal as a direct appeal under section 1237, the court declined to do so on the grounds, described *post*, that no remedy was available to the defendant. (*Aguilar*, *supra*, 227 Cal.App.4th at p. 67.)

As to habeas relief, the court applied *People v. Villa* (2009) 45 Cal.4th 1063 (*Villa*) and determined that Aguilar was " 'ineligible as a matter of law' " because he had fully served his sentence for his conviction and so was neither in " 'actual nor constructive state custody.' " (*Aguilar*, *supra*, 227 Cal.App.4th at p. 68, citing and quoting *Villa*.)

As to *coram nobis* relief, the court applied *People v. Kim* (2009) 45 Cal.4th 1078 (*Kim*) and determined that it too was unavailable to defendant: *Coram nobis* is extremely limited; it is intended to correct vital errors of fact, rather than of law. The defendant's claims that his counsel had failed to adequately advise him of immigration consequences involve only the legal effect of his guilty plea and may " 'have encouraged or convinced him . . . to make different strategic choices or seek a different disposition'; they therefore 'are not facts that would have prevented rendition of the judgment' and are not grounds for *coram nobis* relief." (*Aguilar*, *supra*, 227 Cal.App.4th at pp. 69-70, citing and quoting *Kim*.)

As to relief under section 1016.5, the court applied *People v. Chien* (2008) 159 Cal.App.4th 1283 and determined the trial court would have lacked discretion in any event to provide that form of statutory relief: "To obtain that relief, a defendant must demonstrate that . . . the court failed to advise the defendant of the immigration consequences as provided by section 1016.5. . . . [¶] It is very likely that Aguilar's motion claimed primarily that his own counsel failed to advise him of the immigration consequences of his plea, rather than that the trial court failed to do so, because the record

6

affirmatively indicates that the court gave the advice required by section 1016.5. . . . [¶] Section 1016.5 addresses only the duty of trial courts to advise the defendant of the immigration consequences of the plea. . . . [It] does not provide the trial court with jurisdiction to address a claim that a defendant was deprived of the effective assistance of counsel by counsel's failure to fully advise him or her of the immigration consequences of a guilty plea." (*Aguilar*, *supra*, 227 Cal.App.4th at pp. 70-71, citing and quoting *Chien*.)

Finally, in light of the United States Supreme Court's opinion in *Padilla v. Kentucky* (2010) 559 U.S. 356, the *Aguilar* court further considered how it should view the claims in the defendant's motion asserting lack of assistance from his counsel in helping him to understand the immigration effects of his guilty plea. The court applied *People v. Shokur* (2012) 205 Cal.App.4th 1398 and reasoned: "The fact that Aguilar's motion does not entitle him to relief under section 1016.5 does not end the inquiry. The duties that defense counsel owes to a noncitizen criminal defendant client may be shown to involve providing his or her client with counsel's own advice as to the consequences of a plea, even when the court has provided the advice required by section 1016.5. . . . [¶] But the fact that Aguilar may be entitled to use any available remedy to seek relief from what he claims was ineffective assistance of counsel does not mean that any particular remedy is available to him for that purpose. (*Aguilar*, *supra*, 227 Cal.App.4th at p. 72.) "Contrary to [the defendants'] interpretation of [*Padilla*,] it does not require states to provide an avenue for noncitizens to challenge their convictions for having received

7

erroneous immigration advice when all available remedies have lapsed and no other remedy remains available." (*Aguilar*, at p. 74.)

The court determined from the record before it that none of those remedies were available to the defendant, and the court affirmed the trial court's order denying the "defendant's motion for want of jurisdiction." (*Aguilar*, *supra*, 227 Cal.App.4th at p. 75.)

The approach taken in *Aguilar* strikes us as methodical, analytically sound, promoting judicial economy, and permitting a fair evaluation of a noncitizen defendant's case; the appellate court ensures, first, that the trial court is not hearing a case in which it has no power to grant relief and, second, that a subsequent and altogether fruitless appeal will not be taken. Therefore, in cases where a trial court denied a noncitizen defendant's motion seeking, on grounds relating to collateral immigration consequences, to withdraw his or her guilty plea and vacate the conviction; and where that denial was ordered without the trial court reaching the merits of the noncitizen defendant's motion; and where the noncitizen defendant appeals that denial; an appellate court should look to the record to see if any of the three applicable remedies discussed and evaluated in *Aguilar*— habeas corpus, *coram nobis*, or section 1016.5—are available to the noncitizen defendant.

If the record reveals that none of those remedies are available to the noncitizen defendant, then the appellate court should affirm the trial court's order. If the record reveals that one or more of those remedies is available, the appellate court should permit the trial court to evaluate the motion accordingly in the first instance.

8

For habeas corpus jurisdiction to lie, a defendant must be " ' "in prison or on probation or parole or otherwise in constructive custody" ' " of the State of California, and " ' "*lingering noncustodial collateral consequences*" ' " do not satisfy that requirement; federal custody likewise does not satisfy that requirement. (*Villa*, *supra*, 45 Cal.4th at pp. 1070-1071; see *Aguilar*, *supra*, 227 Cal.App.4th at pp. 64, 68.) *Coram nobis* relief generally is available where a defendant alleges "newly discovered facts [establishing] a basic flaw that would have prevented rendition of the judgment. (*Kim*, *supra*, 45 Cal.4th at p. 1103) The rule has long been that "a claim of ineffective assistance of counsel, which relates more to a mistake of law than of fact, is an inappropriate ground for relief on *coram nobis*." (*Id.* p. 1104; see *Aguilar*, at pp. 64, 69-70.) Statutory relief under section 1016.5 may be granted where a noncitizen defendant demonstrates that the court failed in its statutory duty to advise the defendant of the immigration consequences of his or her plea. (*People v. Totari* (2002) 28 Cal.4th 876, 884.) However, defense counsel's failure in its duty to apprise the defendant of the precise nature of those immigration consequences is not cognizable under section 1016.5. (*Chien*, *supra*, 159 Cal.App.4th 1283, 1288; see *Aguilar*, at p. 71.) A court may rely on a validly initialed and executed *Tahl* form as a proper method of imparting section 1016.5's required admonishment. (E.g., *People v. Gutierrez* (2003) 106 Cal.App.4th 169, 174-175; *People v. Panizzon* (1996) 13 Cal.4th 68, 83.) For claims addressing interpreter competence, interpreter certification " 'is simply foundational to the interpreter's competence,' " and " '[t]here is no right…to a certified interpreter. There is only a right

9

to a competent interpreter." (*People v. Superior Court* (*Almaraz*) (2001) 89 Cal.App.4th 1353, 1359; *People v. Estrada* (1986) 176 Cal.App.3d 410, 415.)

Here, none of the three applicable remedies is available to defendant. As to state habeas relief based on ineffective assistance of counsel, defendant is currently held in federal custody. Defendant's motion states that it is filed pursuant to section 1016.5 for the trial court's failure to give the required advisement, but its substance also argues that his Spanish interpreter and his defense counsel in 2007 failed to properly apprise him of any immigration consequences. To the extent his motion seeks statutory relief under section 1016.5, the record reveals defendant initialed and signed the *Tahl* form, which included the advisement that his conviction would *certainly* result in adverse immigration consequences, including removal from the United States. The record further reveals that the trial court verified orally whether defendant understood the contents of the *Tahl* form, and that a certified Spanish interpreter declared that she translated the entire form from English into Spanish. The record thus sufficiently reveals that the trial court fulfilled its statutory duty under section 1016.5. As to defendant's claims that his counsel and his interpreter were ineffective, they go to his ability to understand the *legal effects* of his plea—they do *not* go to the ability of the trial court to render judgment. For that reason, his claims are unsuitable for *coram nobis* relief.

Defendant contends we should treat his appeal of the trial court's return of his motion as a direct appeal under section 1237 requiring *de novo* review. The trial court did not give defendant a required hearing on his section 1016.5 motion, thus resulting in a

10

violation of his right to procedural due process. Relying on *Chien*, defendant further contends the record reveals the trial court did not give the required advisement, because the trial court only *verified* that defense counsel and the certified interpreter had adequately explained to defendant the immigration consequences of his plea—the court did not *itself* give the required advisement, and defendant stated that the interpreter "did not translate any information regarding immigration consequences."

As our discussion *ante* illustrates, a trial court may rely on a validly executed *Tahl* form as a way of giving section 1016.5's required advisement, and the *Tahl* form here contained the required statutory language; all *Chien* held was that the record must show the trial court *failed* to give the defendant the section 1016.5 advisement before relief under that statute could be sought (*Chien, supra,* 159 Cal.App.4th at pp. 1287-1288), which the record here, by virtue of the signed and initialed *Tahl* form, does not do. The trial court in this case thus actually went above and beyond what is statutorily required of it to any extent it orally verified that defendant understood any immigration consequences of his plea. Taking at face value defendant's contentions that the interpreter did not translate any information regarding immigration consequences and that his counsel similarly failed to discuss with him the nature of those consequences, the state of the record belies those contentions: the Spanish interpreter was certified; the interpreter declared she had fully translated the contents of the *Tahl* form to defendant, including the immigration advisement; defendant offers no evidence—only his own contrary assertion—that would call into question the interpreter's competence or any presence of

11

bias; defendant indicated to the trial court that his attorney had discussed with him all of the items on the *Tahl* form; and defendant further indicated he was not then under any compulsion or pressure to make the plea.  Finally, as our discussion *ante* illustrates, even were we to determine under fully *de novo* review of a direct appeal that the trial court *did* err in concluding it had no jurisdiction to hear defendant's motion, that course of action would emptily consume time and judicial resources, because there is no remedy within the trial court's power to grant.

In sum, following the approach described in *Aguilar*, the record reveals that no remedy is available to defendant, because the trial court gave the advisement required under section 1016.5 by way of the *Tahl* form; defendant's claims do not fit the framework for *coram nobis* by calling into question any facts that would have prevented the trial court from rendering a judgment; and defendant cannot avail himself of a writ of habeas corpus, as he is not in state custody.

## DISPOSITION

The order of the trial court is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

KING
J.

MILLER
J.

12