Filed 11/19/13  P. v. Baldwin CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        **Plaintiff and Respondent,**<br><br>v.<br><br>**ANTHONY LEE BALDWIN,**<br><br>        **Defendant and Appellant.** | **A136164**<br><br>(Del Norte County<br>Super. Ct. No. CRF129177) |

Anthony Lee Baldwin appeals from a judgment of conviction entered after a jury found him guilty of second degree robbery (Pen. Code, § 211, subd. (a)), petty theft with a prior theft conviction (Pen. Code, §§ 484, subd. (a), 666, subd. (a)), and brandishing a knife (Pen. Code, § 417, subd. (a)(1)).  His sole contention on appeal is that he was denied his Sixth Amendment right to effective assistance of counsel.  Specifically, Baldwin claims his counsel provided ineffective assistance in the conduct of plea negotiations with the prosecution and in failing to request a continuance after Baldwin fell asleep during the proceedings below.

We conclude Baldwin's claims fail because he has not demonstrated he was prejudiced by counsel's allegedly inadequate performance.  Accordingly, we will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2012, a man later identified as appellant Baldwin attempted to leave a Walmart store wearing a pair of shoes for which he had not paid. Leticia Rosales, the store's assistant manager, followed Baldwin, and when she asked him to stop, he turned around with a box cutter in his hand. He moved forward until he was three to four feet from Rosales and told her, "I'll f---ing cut you, bitch." Rosales retreated, and Baldwin ran to his car. When she went out into the parking lot to get the car's license number, Baldwin revved the engine and sped up toward her. The car came within one foot of Rosales before turning and speeding away. Baldwin was arrested some two weeks after the incident.

An information filed April 17, 2012, charged Baldwin with the following three counts: second degree robbery, petty theft with a prior theft conviction, and brandishing a knife.

*Plea Negotiations and First Marsden Motion*

Prior to trial, Baldwin twice requested hearings under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). At the first *Marsden* hearing, in addition to complaining about trial counsel's performance, Baldwin claimed defense counsel had offered to the prosecution a plea for "grand theft of person with a bunch of years," even though he had told counsel he was unwilling to take a deal that involved second degree robbery and was only willing to do some prison time for petty theft with a prior conviction. Defense counsel explained the prosecution's offer required Baldwin to plead to second degree robbery because of its effect as a serious or violent felony under California's three-strikes law. When his client rejected the offer, defense counsel proceeded with the preliminary hearing the next day. Counsel represented to the court that he had communicated with the district attorney about appellant's unwillingness to plead to a strike offense and the unlikelihood of settlement absent a concession from the prosecution on this point.

Baldwin and his trial counsel agreed counsel would explore settlements while Baldwin maintained a "rigid posture" to pressure the prosecution to offer a better deal. Defense counsel acknowledged he had told the district attorney, "[appellant] can do time

standing on his head," but explained the comment's purpose was to dissuade the prosecution from attempting to settle the case by threatening to "pile on the time." He also acknowledged he had asked the prosecution whether it would settle the case for a plea on the grand theft and brandishing charges, believing that it might help his client avoid a strike offense, but that he did not present it as an "offer." Defense counsel claimed that presenting this idea early on would plant a seed for a future favorable offer.

The trial court denied Baldwin's first *Marsden* motion.

*Further Plea Negotiations and the Second Marsden Motion*

Five days before trial, defense counsel advised the court Baldwin was willing to enter a guilty plea in exchange for a stipulated term of two years, but the prosecution's previous offers had "been in the range of five to six years." After defense counsel noted his client was facing 10 or 11 years if his prior offenses were provable, the prosecutor told the court the parties were too far apart to reach agreement. As the prosecutor put it, "There's no way we would consider coming anywhere near two years[.]" The court allowed the parties two days to negotiate a resolution and warned Baldwin it would not consider plea or sentence bargaining on the day of trial. The trial judge stated, "The only thing I would accept on the day of trial is a plea to the sheet, which he has a huge exposure."

The business day before trial, Baldwin requested another *Marsden* hearing, where he complained about perceived inadequacies in defense counsel's investigation of witnesses. When the court asked Baldwin why he had not raised his complaints earlier, Baldwin responded, "I didn't think we were going to go to trial. I thought we were going to plead out[.]" The court denied the *Marsden* motion.

Later that same day, the court warned Baldwin, "I will not accept anything other than a straight up plea on -- after today." The court then asked appellant directly whether he wanted to discuss a negotiated resolution. Baldwin responded that he would "take the petty theft or grand theft," although his counsel explained Baldwin had not been willing to agree to a term of more than two years. Defense counsel stated Baldwin was facing an

3

11-year maximum sentence, and the prosecutor made clear the People's best offer would be seven years of prison time with two priors.

The trial court commented that there was no more it could do to help the parties' negotiations. Defense counsel made some suggestions, such as having Baldwin plead to the charges and leave sentencing to the court's discretion, persuading the prosecution to agree to a sentence "lid" when referring the matter to probation, or proceeding by way of a court trial. Noting that a lot of options were on the table, the court adjourned the matter to give defense counsel a few hours to confer with his client. But when court reconvened at the end of the day, Baldwin did not appear. The court expressed its intention to go forward with trial on the next business day.

*Baldwin's Counsel Declines to Request a Continuance*

After completion of voir dire, the court received a note from a juror stating that Baldwin was "nodding off from time to time." The court excused the jury and asked appellant whether he was having a hard time staying awake. Baldwin said he hadn't gotten much sleep, and the court advised him to drink some coffee during the break, while defense counsel suggested he get some fresh air.

During the examination of Rosales, the prosecutor interrupted to ask the court whether Baldwin was okay. Defense counsel conferred with his client, and the court announced it would take the afternoon break. Once the jurors left, the court said it had noticed Baldwin "sleeping on and off" during the prosecution's direct and defense counsel's cross-examination. To "make a record on that issue," defense counsel stated to the court that earlier, in chambers, with all attorneys, appellant, and the court present, defense counsel had explained that he did not believe "the fact that [his] client is sleepy would constitute good cause to ask to continue the matter," and therefore he had not requested a continuance. The trial judge responded that, although he had not watched appellant constantly, he did not see him sleeping at all during the second half of the morning, but did see appellant sleep during the first half of the morning and quite a bit that afternoon. The court ended the inquiry there, and the proceedings resumed after the break.

4

*Request to Change Plea*

In the middle of trial, after one witness had taken the stand, Baldwin attempted to change his plea to guilty. The court stated it would "allow [Baldwin] to enter an open plea to all three counts." After appellant conferred with his counsel in court, counsel announced, "I'm sorry, your Honor. We shall proceed." The court then resumed the trial.

*Conviction, Sentence, and Appeal*

On June 12, 2012, the jury convicted Baldwin on all counts. On August 2, 2012, the court sentenced Baldwin to nine years in prison. The following day, Baldwin filed this appeal.

DISCUSSION

Baldwin contends his trial counsel provided ineffective assistance in two respects. First, he argues his counsel did not adequately communicate the strength of the evidence against him and the benefits of a plea bargain. Appellant claims that if he had been properly advised, he would have accepted the plea bargain offered by the prosecution, which would have resulted in a shorter term of imprisonment. Second, Baldwin asserts his counsel was ineffective because he failed to request a continuance when Baldwin nodded off during the proceedings. According to Baldwin, this deprived him of his right to be mentally present during trial.

I.      *Standard of Review*

On appeal, a defendant claiming ineffective assistance of counsel has the burden to demonstrate, by a preponderance of the evidence, that he is entitled to relief on grounds of ineffective assistance. (E.g., *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.) To establish ineffective assistance of counsel in the context of his rejection of a plea bargain, Baldwin "must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; *and* (2) counsel's deficient performance subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more

5

favorable to the defendant.  [Citations.]" (*In re Alvernaz* (1992) 2 Cal.4th 924, 936-937 (*Alvernaz*).)

Defendant's burden is difficult to carry on direct appeal (*People v. Vines* (2011) 51 Cal.4th 830, 876), because the trial record often does not indicate why trial counsel acted or failed to act in the manner he did.  (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-268.)  And we may not reverse a conviction for ineffective assistance of counsel on direct appeal unless the record affirmatively discloses that counsel had no rational tactical purpose for his act or omission.  (*People v. Vines, supra,* 51 Cal.4th at p. 876.)  Where the record sheds no light on the issue, we must affirm unless there could be no conceivable reason for counsel's act or omission.  (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)  Furthermore, our review of trial counsel's performance is deferential (*People v. Ledesma, supra,* 43 Cal.3d at p. 216), and there is a strong presumption that counsel's actions fell within the wide range of reasonable professional assistance.  (*People v. Vines, supra,* 51 Cal.4th at p. 876.)

Nevertheless, "we need not dwell on the question whether defendant can establish deficient performance by his trial counsel" if he cannot establish prejudice, "that is, a reasonable probability of a more favorable outcome in the absence of the assertedly deficient performance."  (*People v. Stewart* (2004) 33 Cal.4th 425, 495.)  In other words, we ask "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Citation.]" (*In re Cudjo* (1999) 20 Cal.4th 673, 687.)  To meet this burden, a defendant must prove prejudice that is a demonstrable reality and not simply speculation.  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

A defendant claiming ineffective assistance in the plea bargaining process can satisfy the prejudice prong by showing a reasonable probability that, absent the deficient representation, he would have accepted the proffered plea bargain and it would have been approved by the court.  (*Alvernaz, supra,* 2 Cal.4th at p. 937.)  "In this context, a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient

in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims."[1] (*Id*. at p. 938.)

Baldwin relies in particular on *Lafler v. Cooper* (2012) 566 U.S. ___ [132 S.Ct. 1376] (*Lafler*), in which the United States Supreme Court articulated a standard of prejudice similar to that adopted in *Alvernaz*. To establish prejudice under *Lafler,* "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." (*Lafler, supra,* 132 S.Ct. at p. 1385.)

II.     *Baldwin Has Failed to Show He Was Prejudiced by Counsel's Conduct in the Plea Negotiations.*

Even if we assume the performance of Baldwin's counsel fell below an objective standard of reasonableness under prevailing professional norms, his claim of ineffective assistance must fail because he has not demonstrated prejudice. (See *Alvernaz, supra,* 2 Cal.4th at pp. 936-937.) Baldwin's opening brief devotes only one paragraph to analyzing the issue of prejudice under the facts of this case. He simply recites the fact that the plea offer of five to six years was less severe than his ultimate sentence of nine years, and he claims his trial counsel failed properly to advise him about the weaknesses of his case and its probable outcome. He makes no explicit claim that he would have accepted the plea offer, and even if this is implicit in is argument, his opening brief points

---

[1] In *Alvernaz,* the court "note[d] the ease with which a defendant, after trial, may claim that he or she received inaccurate information from counsel concerning the consequences of rejecting an offered plea bargain. 'It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . .' [Citation.] . . . Thus, in reviewing such a claim, a court should scrutinize closely whether a defendant has established a reasonable probability that, with effective representation, he or she would have accepted the proffered plea bargain." (*Id*. at p. 938, fn. omitted.)

to no facts to support the claim.[2]  His bare, unsupported assertion "is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence."  (See *Alvernaz, supra,* 2 Cal.4th at p. 938.)  Baldwin offers no such corroboration.

Nor does our independent examination of the record support an inference that Baldwin would have accepted the proffered plea bargain.  Baldwin repeatedly expressed his unwillingness to agree to a strike offense.  He does not tell us what his counsel could have said to persuade him to accept the plea bargain, given that defense counsel had already explained to him the strength of the prosecution's case, including the fact that there was surveillance footage of Baldwin "brandishing a box knife in front of a store employee[.]"  Indeed, at the first *Marsden* hearing, defense counsel expressed his view that based on the evidence available, there was a substantial probability the jury would find Baldwin guilty.  And contrary to Baldwin's claims, defense counsel stated on the record (and in his client's presence) that Baldwin faced a maximum term of 11 years in prison if convicted.

The trial court itself told Baldwin it was not realistic for him to expect a sentence of only "a couple years in prison."  In response, Baldwin said, "Oh, no.  I know that."  The court also twice warned Baldwin it would not consider plea or sentence bargaining on the day of trial.  Despite these warnings, Baldwin informed the court, on the last business day before trial, that he would only "take the petty theft or grand theft," and defense counsel confirmed his client had never expressed interest in a plea agreement that involved more than two years of imprisonment.  At that point, the prosecutor was adamant that the People would not accept any plea agreement involving only six years' imprisonment, because he thought it was "light" and "almost a gift" given the seriousness of the offense.  The minimum term of imprisonment the prosecutor would accept was seven years.  Baldwin's counsel urged him to offer the People a five-year term "to narrow

---

[2] Baldwin's reply brief asserts "reason and the record contradict" the People's argument that he was not prejudiced.  Yet it provides not a single citation to the record in support of this assertion.

the gap."  Baldwin made no such offer, and the court recessed after the discussion of a possible negotiated resolution.  When it reconvened, Baldwin did not return.

The record before us shows Baldwin was unwilling to negotiate on the final day for plea bargaining.  Although he was clearly informed the court would entertain no more plea bargaining after that date, Baldwin made no effort to engage in further negotiations and simply did not return to court.  Baldwin has therefore failed to demonstrate he was prejudiced, because there is no basis for concluding he would have accepted the proffered plea bargain.  (*Alvernaz, supra,* 2 Cal.4th at p. 937; accord, *Lafler, supra,* 132 S.Ct. at p. 1385.)  Moreover, Baldwin's opening brief makes no effort to show either that the prosecution would not have withdrawn the offer under the circumstances of the case, or that the trial court would have accepted the plea bargain.  Baldwin says nothing about these crucial elements of the prejudice analysis.  (See *Lafler, supra,* 132 S.Ct. at p. 1385 ["defendant must show . . . that . . . the prosecution would not have withdrawn [the plea] in light of intervening circumstances . . . [and] that the court would have accepted its terms"]; *Alvernaz, supra,* 2 Cal.4th at p. 937 [to show prejudice defendant "must prove . . . the proffered plea bargain . . . would have been approved by the trial court"].)

III.  *Baldwin Suffered No Prejudice from His Counsel's Failure to Request a Continuance.*

Baldwin also claims his trial counsel was ineffective in failing to request a continuance after Baldwin was observed sleeping during a portion of the proceedings.  Baldwin argues he was deprived of his constitutional right to be mentally present during a felony prosecution.  Citing *People v. Berling* (1953) 115 Cal.App.2d 255, Baldwin asserts he "was not conscious for much of his felony trial, therefore he was not present as constitutionally mandated."  We conclude this assertion lacks factual support and further conclude Baldwin has failed to establish he was prejudiced by his counsel's alleged failure.

Initially, we note that Baldwin was observed sleeping only twice during the proceedings.  The first time was during parts of the jury voir dire, and the second was during parts of Rosales's examination.  As to Baldwin's sleeping during a portion of the

9

voir dire proceedings, it is not reasonably probable that his failure to remain alert affected the ultimate outcome of his trial. "Because the use of peremptory challenges is inherently subjective and intuitive, an appellate record will rarely disclose reversible incompetence in [the jury selection] process." (*People v. Montiel* (1993) 5 Cal.4th 877, 911.) Moreover, objections and peremptory challenges during the jury selection process generally involve tactical choices *by counsel*. (See *People v. Anderson* (2001) 25 Cal.4th 543, 569-570.) Baldwin directs us to nothing in the record indicating defense counsel's performance during voir dire fell below accepted professional norms. He also makes no claim that the composition of the jury would have been different had he not been "nodding off" during voir dire, much less any claim that a difference in the makeup of the jury would have altered the verdict it reached. Absent such a showing, Baldwin cannot establish prejudice.

Nor are we persuaded Baldwin was prejudiced by counsel's failure to request a continuance after appellant was seen sleeping during portions of Rosales's testimony. At the end of Rosales's redirect examination, the trial court asked whether defense counsel had any further questions. Counsel conferred with Baldwin and told the court he had "[n]othing further." Perhaps more important, even after having the opportunity to review the entire trial record, Baldwin's *appellate* counsel does not suggest there were objections trial counsel failed to make or lines of questioning trial counsel left unexplored.

Baldwin argues the jurors may have had an unfavorable impression of him after seeing him sleep through parts of his trial. He speculates they "likely assumed that Baldwin's act of sleeping reflected a lack of interest and arrogance." Again, however, he directs us to nothing in the record that would support this claim, and his speculation is insufficient to prove prejudice. (*People v. Fairbank, supra,* 16 Cal.4th at p. 1241.)

Baldwin also claims his counsel's failure to request additional time deprived him of the opportunity to achieve a negotiated settlement. For the reasons set forth in part II, *ante,* we reject this argument. Furthermore, his claim that his attempt to change his plea during trial shows it is more than reasonably likely he would have waived trial and pleaded is flatly contradicted by the record. When Baldwin asked to change his plea after

10

examination of the first witness had begun, the trial court made clear it was willing to allow Baldwin "to enter an *open plea* to all three counts." (Italics added.) But after the trial court indicated it was unwilling to allow Baldwin to remain free on bail, and the prosecutor informed the court "the People are adamant about requesting remand at this time," Baldwin changed his mind and decided not to change his plea. Defense counsel later explained that the issue of Baldwin's custody status was the likely reason for his client's decision not to change his plea.

Lacking any evidence in the record that might establish prejudice, Baldwin would have us hold his claimed inability to be mentally present during trial amounts to structural error, making it reversible per se. Of course, "there is no constitutional prohibition against the trial and conviction of a defendant who fails to pay attention in court— whether out of indifference, fear, confusion, boredom, or sleepiness—unless that defendant also cannot understand the nature of the proceedings against him or adequately assist counsel in conducting a defense." (*Watts v. Singletary* (11th Cir. 1996) 87 F.3d 1282, 1287 [no doubt as to defendant's competency where defendant slept through 70 percent of his murder trial].) Baldwin points to nothing in the record demonstrating he was unable either to understand the proceedings against him or to assist in conducting his defense.[3]

The cases upon which Baldwin relies for his claim of structural error are entirely inapposite, for they involve circumstances in which the defendants were denied their right under the California Constitution to have the assistance of an interpreter throughout the proceedings. (*People v. Aguilar* (1984) 35 Cal.3d 785, 791 [defendant denied constitutional right to an interpreter where same interpreter was not available to assist defendant throughout proceedings]; *People v. Chavez* (1981) 124 Cal.App.3d 215, 227-228 [defendant denied constitutional right to interpreter where defense counsel required

---

[3] Baldwin's reply brief claims his trial counsel admitted "appellant had requested a continuance because he was not prepared for trial[.]" The page of the reporter's transcript to which the reply brief refers contains no such admission.

11

to serve as both lawyer and interpreter].)  Neither of these cases involved a claim of ineffective assistance of counsel, and neither case considered the question of prejudice.

Equally inapposite is *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140.  That case involved a defendant's right to be represented by the counsel of his choice.  (See *id*. at p. 144.)  The court specifically distinguished a defendant's right to *choose* counsel from a defendant's right to *effective assistance* of counsel.  (*Id*. at pp. 146-147.)  The latter right is not violated unless a defendant can establish prejudice.  (*Id*. at p. 147 ["a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced"].)  In contrast, "[w]here the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation."  (*Id*. at p. 148.)  Here, Baldwin is claiming only ineffective assistance of counsel, and thus the holding of *United States v. Gonzales-Lopez* has no application.

As was true of Baldwin's claim of ineffective assistance in the plea bargaining process, Baldwin's claim of ineffective assistance for failure to request a continuance fails because he has not demonstrated prejudice.

DISPOSITION

The judgment is affirmed.[4]

---

[4] In a separate petition for writ of habeas corpus, case No. A138002, appellant has raised a number of claims challenging the competency of his trial counsel.  We have denied that petition by separate order filed this date.

12

 

 

                           _____

                           Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.